# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

CRST VAN EXPEDITED, INC.,      )
                                 )
             Plaintiff,        )
                                 )
vs.                                )     Case No. CIV-04-0651-F
                                 )
J.B. HUNT TRANSPORT, INC.,      )
                                 )
             Defendant.     )

## ORDER

Before the court is CRST's Motion for Partial Summary Judgment and Injunction, filed May 3, 2006 (doc. no. 195). Defendant (herein: Hunt) has responded to the motion, and the motion is at issue. Consideration of the Motion for Partial Summary Judgment and Injunction also requires consideration of Plaintiff's Motion to Strike the Affidavits of Mark Whitehead and Drivers, filed on June 6, 2006 (doc. no. 235). Hunt has responded to that motion, so that motion is also at issue. The court will first address the Motion to Strike.

The factual background of this litigation may be found in <u>CRST Van Expedited, Inc. v. J. B. Hunt Transport, Inc.</u> 2006 WL 335765 (W.D. Okla. 2006), and will not be repeated here.

<u>Plaintiff's Motion to Strike the Affidavits of Mark Whitehead and Drivers.</u>

The Motion to Strike seeks an order striking the affidavit of Mark Whitehead and the affidavits of approximately fifty J.B. Hunt drivers. The driver affidavits go to the issue of causation. The affiants in the driver affidavits typically state that they left CRST because of dissatisfaction with their situation at CRST. Some of the drivers

say that they decided to leave CRST either before being contacted by a Hunt recruiter or for other reasons not specifically attributable to persuasion from Hunt recruiters.

In some respects, as pointed out by CRST, Mr. Whitehead's affidavit flatly contradicts the testimony he gave as the personification of Hunt as Hunt's Rule 30 (b)(6) designee on April 11, 2006.   In other respects, Mr. Whitehead's affidavit substantially qualifies his deposition testimony.   CRST understandably seeks to hold Hunt to the admissions extracted at the Rule 30(b)(6) deposition.   Hunt urges, in essence, that it should be permitted to wiggle out of those admissions.

The parties' arguments on the motion to strike should be considered in light of the context in which the Rule 30(b)(6) deposition was taken.   The first version of CRST's Rule 30(b)(6) notice was served in October, 2005. This precipitated a motion by Hunt for a protective order.   That motion was heard on November 2, 2005, resulting in modification of the Rule 30(b)(6) notice by the court.   At the hearing, the court, having closely scrutinized the operational matters sought to be probed on the basis of the Rule 30(b)(6) notice, commented that "it's likely to take more than one 30(b)(6) designee" to comply with the notice.   Transcript, at 40.   The court also observed that the Rule 30(b)(6) notice "does impose upon the defendants some serious compliance obligations," which were also described as "some additional discovery obligations [that are] much more than minimal discovery obligations."   Id. at 40, 41. The court also commented that "there's just no way that the [Rule 30(b)(6) deposition] can be done in seven hours," so the court lifted the seven hour limit found in Rule 30(d)(2).   Id. at 50.

The final version of the notice was served on March 31, 2006.   Although there may now be some respects in which CRST may wish that it had included some broader specifications in the Rule 30(b)(6) notice, it is fair to say that the notice

2

pursuant to which the deposition of Hunt was taken required Hunt to testify, through its designee, about numerous particulars relating to the actual operation of its recruitment and hiring of CRST drivers.

Although the email traffic between counsel for the parties suggests some skepticism on the part of CRST's counsel that the matters encompassed by the notice could all be covered by Mr. Whitehead and could all be covered in one day, Hunt designated Mr. Whitehead as its only Rule 30(b)(6) witness.   This was Hunt's prerogative.

Mr. Whitehead is a claims manager.   As a Hunt employee, he has served variously as "accident specialist, subrogation supervisor, casualty claims manager, director of casualty claims, corporate director of claims, [and] vice president of claims and litigation management." Whitehead deposition transcript, at 5.   By his own account, he has never had line responsibility for recruiting drivers, or, for that matter, for any other operational aspect of moving freight.  Id. at 10 - 11, 42 - 43.  To focus, at this point, on but one of the areas of tension between Hunt's Rule 30(b)(6) testimony and Mr. Whitehead's affidavit, Mr. Whitehead testified as Hunt's Rule 30(b)(6) designee that "It is my belief that if a recruiter or someone else got paid, a driver was encouraged to change employment and come to J. B. Hunt."  Id. at 124. He later left no room for doubt on this point: "I don't have any problem admitting that if we paid a recruiter to recruit a driver that we certainly encouraged an applicant to change jobs, whether it was from CRST or any other company out there."  Id. at 131. This testimony, clearly relevant to the issues in this case, was fairly embraced by paragraph nine of CRST's specification of topics for Rule 30(b)(6) testimony.  Under that paragraph, Hunt was obligated to produce a witness or witnesses fully prepared to testify knowledgeably as to: "The plans and strategies used by J.B. Hunt and its

3

agents between January 2002 and present (a) to contact drivers employed by CRST and (b) to recruit drivers employed by CRST." Hunt protests that CRST's motion "depends on a preposterous misconstruction of the noticed topics [in the Rule 30(b)(6) notice]," Hunt response, at 1, but there is little room for doubt that Hunt's approach to compensation of its recruiters for successful recruiting efforts is integral to its "plans and strategies . . .to recruit drivers employed by CRST."

The parties cite no Tenth Circuit cases dealing with the permissibility of repudiation of Rule 30(b)(6) testimony by the filing of an affidavit. The closest analogy, and it seems to be an apt analogy, is to cases in which an individual witness attempts, by affidavit, to go back on his deposition testimony, *e.g.*, Franks v. Nimmo, 796 F.2d 1230 (10th Cir. 1986). In Franks, as here, the affidavit was filed in opposition (albeit belated opposition) to a motion for summary judgment. The court's discussion addresses the question of whether the filing of the affidavit should be regarded as an attempt to create "a sham fact issue." Franks, at 1237. The court said that this determination should be made on the basis of the following factors: (i) whether the affiant was cross-examined[1] during his earlier testimony, (ii) whether the affiant had access to the pertinent evidence at the time of his earlier testimony or whether the affidavit was based on newly-discovered evidence, and (iii) whether the earlier testimony reflects confusion which the affidavit attempts to explain. *Id.* Applying those factors to the case before it, the court concluded that "this is one of those unusual cases in which the conflict between the testimony and the affidavit raises only a sham issue." *Id.* Although, ten years after Franks, the court indicated

---

[1] In context, and in light of the discussion in the relevant passages of the cases cited by the Circuit Court on this point (796 F. 2d at 1237), it is clear that "cross examination," as the term is used in Franks, means examination by counsel for the opposing party, as was done at the Rule 30(b)(6) deposition now at issue.

a more categorical approach in <u>Bohn v. Park City Group, Inc.</u>, 94 F.3d 1457 (10th Cir. 1996), by stating simply that the contradictory affidavit "should not be considered," <u>Bohn</u> at 1463, the court has now made it clear that "the more lenient standard set forth in <u>Franks</u>" controls. <u>Kendrick v. Penske Transportation Svces. Inc.</u>, 220 F.3d 1220, 1224 (10th Cir. 2000). *See also,* <u>Burns v. Bd. of County Comm'rs. of Jackson County</u>, 330 F.3d 1275, 1281 - 82 (10th Cir. 2003) (following <u>Franks</u>).

Rule 30(b)(6) serves an important purpose. It is intended to permit litigants to pin down opposing corporate litigants with the same effect as if the testimony were elicited from an individual litigant about his own case. The record before the court (which includes the court's careful review of the entire transcript of the Rule 30(b)(6) deposition) contains indications which are difficult to ignore, which suggest that, in producing Mr. Whitehead as its Rule 30(b)(6) witness, Hunt may have been motivated by something other than a desire to comply fully and fairly with its "serious compliance obligations" under the Rule 30(b)(6) notice. Trotting out a *claims manager* to give Rule 30(b)(6) testimony in fulfillment of the corporation's obligation to provide testimony relating to detailed *operational* matters within a large organization is risky. Hunt made its choice. The court is not inclined to relieve Hunt of the consequences of its choice. However, it is not necessary to decide now whether Hunt is impaled on the testimony Mr. Whitehead gave as Hunt's Rule 30(b)(6) deposition witness. The cases cited on pages 11 and 12 of Hunt's response to the motion to strike deserve serious consideration, and have not been addressed by CRST. The court has concluded, as discussed below, that the driver affidavits are cognizable in opposition to CRST's motion for partial summary judgment, and that those affidavits are sufficient, standing alone, to defeat the motion. Consequently, the extent to which Hunt is bound by its Rule 30(b)(6) testimony is a matter left for

determination at or before trial.  The court expects that the matter will be thoroughly briefed, for trial purposes, by way of briefs in support of and in opposition to a motion in limine.

Most, if not all, of the driver affidavits squarely address the issue of causation. The Rule 30(b)(6) notice focuses on the knowledge, the motives, the internal deliberations, and the related activities of Hunt's management and Hunt's recruiters, and not on the motivations of the drivers who went to work for Hunt.

Indulging, for the moment, the assumption that a Hunt officer or employee, employed at a level which would qualify him for designation as a Rule 30(b)(6) witness, could testify as to the intent and motivation of a Hunt recruit, the fact remains that the Rule 30(b)(6) notice did not require Hunt to produce a witness to testify as to causation.  Just as adverse consequences cannot flow from the inability of a Rule 30(b)(6) designee to testify as to matters not embraced by the specifications in the notice, a litigant which has provided testimony responsive to the topics specified in a Rule 30(b)(6) notice is at liberty to rely on other witnesses to address other issues, even if the testimony of the other witnesses may indirectly help avoid  the impact of the testimony given pursuant to Rule 30(b)(6).  This is the essence of CRST's complaint as to the driver affidavits, and the court concludes that the complaint has no merit.[2]  Accordingly, the court concludes that it may not, at least for purposes of Hunt's opposition to CRST's motion for partial summary judgment, disregard the driver affidavits.  It makes no difference whether information as to causation was

---

[2]   It should also be noted that, save for its assertion that the driver affidavits impermissibly address the issue of the timing of recruiting contacts (CRST brief, p. 10), there is very little in CRST's moving papers which directly attacks the legal permissibility of Hunt's proffer of the driver affidavits, as distinguished from the Whitehead affidavit.

"reasonably available" (CRST brief in support, at 15) to Hunt at the time of the Rule 30(b)(6) deposition if that information was not required by the Rule 30(b)(6) notice.

For these reasons, the Motion to Strike will be denied as to the driver affidavits. Because, as is discussed below, the driver affidavits alone are sufficient to require denial of CRST's Motion for Partial Summary Judgment, the Motion to Strike is deemed moot as to the Whitehead affidavit.

<u>CRST's Motion for Partial Summary Judgment and Permanent Injunction.</u>

CRST's motion, doc. no. 195, seeks an order (i) finding Hunt liable to CRST for tortious interference, (ii) granting CRST a permanent injunction, (iii) adjudicating Hunt to be liable to CRST with respect to 334 identified drivers, and (iv) reserving for trial the determination of the amount of damages CRST is entitled to recover from Hunt.  Motion, at 1, 4; Memorandum in Support ("Memorandum"), doc. no. 200, at 21.

The court, applying the stringent standards applicable under Rule 56, declines to make the general finding of liability sought by CRST in the first prong of its motion.  The fact that the court ruled in favor of CRST on the basis of contested evidence at the preliminary injunction stage does not, in the circumstances presented here, translate into a basis for a general and final determination, as a matter of law, that Hunt is liable to CRST.  It should also be noted that the first prong of CRST's motion, seeking a general determination of liability, with consequences not specified (Memorandum, at 13), is perplexingly ill-defined.  The motion goes on, in the second and third prongs, to seek adjudications as a matter of law as to permanent injunctive relief and as to liability with respect to 334 identified drivers.  The upshot of the general determination sought in the first prong is not disclosed.  To what end is the first prong advanced?  The obscurity, in this respect, of the first prong of the motion

makes the court as wary as it would be if it were called upon to render a purely advisory ruling.

The second prong of the motion seeks a summary determination that CRST is entitled to final injunctive relief against Hunt.  In effect, CRST seeks an order transmuting the court's preliminary injunction findings into incontrovertible facts for summary judgment purposes.  Although cases can certainly be conceived in which that might be legally permissible, the court concludes that this is not such a case.  The evidence on causation was controverted at the preliminary injunction hearing. Findings made, as a preliminary matter, on the basis of controverted evidence, do not themselves become incontrovertible facts either for purposes of Rule 56 or for purposes of the final hearing on the merits.  Indeed, as to causation, it now appears from the record that that issue may be more intensely contested at the trial than it was at the preliminary injunction hearing.  Consonant with the procedural sequence contemplated by Rule 65, the purpose of the preliminary injunction hearing was to get the parties before the court on relatively short notice so that the court could preliminarily assess the merits and the urgency of the matter.  The resultant relief was *preliminary*.  On the record before the court, it would be erroneous as a matter of law for the court to make final injunctive relief a *fait accompli* by way of partial summary judgment.  Hunt is entitled to the final hearing contemplated by Rule 65.

In the third prong of its motion, CRST seeks an adjudication that Hunt is liable to CRST for tortious interference with respect to 334 identified drivers.

CRST's argument appears to presuppose that the approximately 50 drivers' affidavits should, and will, be disregarded.  Most of he driver affiants proffered by Hunt are from individuals in the group of 334 drivers proffered by CRST.  Those affidavits raise factual questions as to causation with respect to the affiants.  In

8

combination with other records cited by Hunt in opposition to the motion (Corrected Brief in Opposition, at 7), the driver affidavits also have the broader effect of undermining any inclination the court might otherwise have to rule against Hunt as a matter of law as to those of the group of 334 who did not sign affidavits. That is fatal to the third prong of the motion. The court will, however, provide the parties with some guidance that may inform their research and writing when they sit down to draft proposed jury instructions (and the briefs in support of those instructions). The motives of a driver leaving the employ of CRST within the primary term of his contract do not have to be unalloyed. The fact that a driver may have been unhappy with some aspects of his employment at CRST does not mean that Hunt could not be guilty of tortious interference in recruiting him to drive for Hunt. CRST does not have to show that the drivers who left CRST and went to Hunt would otherwise not even have considered leaving CRST. The court understands interference law to be more realistic than that. But it is the very ambiguity of the motives that might cause a driver to hop from one company to another that precludes summary judgment as to 334 of CRST's former drivers.[3]

To the extent that it might be argued that the court ought not to generalize from the affidavits and thus should grant partial summary judgment as to those of the group of 334 who did not sign affidavits, it suffices to say that the court does not agree with CRST's reading of Celotex Corp. v. Catrett, 477 U.S. 317 (1986). CRST has the

---

[3] Also by way of guidance for instruction purposes, the court, having noted the contention set forth on p. 5 of Hunt's Corrected Brief in Opposition, opines that it is immaterial whether the recruiter, or the CRST driver being recruited, was aware of the contract, as long as Hunt had corporately been informed (see, CRST Van Expedited, Inc. v. J. B. Hunt Transport, Inc. 2006 WL 335765 (W.D. Okla. 2006), at *6 - 7.) of the contract status of the prospect or otherwise had reasonable cause to believe that the prospect was in the primary term of his contract. See also, id. at *7 (Hunt management decision not to inform its recruiters).

burden of proof on causation.  For that reason, causation may not be summarily adjudicated in favor of CRST merely as a result of the failure by Hunt to produce evidence supporting its position on causation.

On the issue of causation, the short of the matter is this:  The court's ruling on the motion for preliminary injunction (a ruling with which the court remains entirely satisfied) was based, in part, on permissible inferences from the evidence as to Hunt's overall conduct in persistently, systematically and unabashedly pursuing CRST drivers despite having been notified of the drivers' contractual status.  The evidence compelled the inference that Hunt's recruiting efforts were successful.  Thus, given the sheer number of hires of CRST's drivers who were within the primary term of their contract, it required no leap at all to infer, *first,* that, whatever the mix of the motives of any one recruit may have been, Hunt's highly organized recruiting efforts served their intended purpose, *viz.*, those efforts were instrumental in causing numerous drivers to leave CRST during their primary term, *second*, that, absent injunctive relief, Hunt would resolutely[4] continue its recruiting efforts, and *third*, that those recruiting efforts would continue to have their intended effect.  Those inferences, natural though they were, are altogether different from the conclusions court would have to reach in order to grant judgment as a matter of law against Hunt, foreclosing any further litigation of issues of causation.

The fourth prong of the motion, seeking an order reserving the determination of CRST's damages for trial, is dependent on the granting of the first or third prongs, as to which the motion has been denied.  No such order is necessary, because it is a foregone conclusion that, if CRST establishes liability at trial, damages will also be determined at trial.  The motion will accordingly be denied in all respects.

---

[4] The testimony of Alfred C. Harper was especially persuasive on this point.

Plaintiff's Motion for Partial Summary Judgment and Injunction, filed May 3, 2006 (doc. no. 195) is **DENIED.**  Plaintiff's Motion to Strike the Affidavits of Mark Whitehead and Drivers, filed on June 6, 2006 (doc. no. 235) is **DENIED** on its merits as to the driver affidavits and as moot with respect to the affidavit of Mark Whitehead.

Dated July 24, 2006.

_____

STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

04-0651p053(pub).wpd